**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANTAY WALKER,<br><br>Defendant. | Criminal Action No. 19-928 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Shantay Walker's ("Walker") Motion for Reduction in Sentence under the First Step Act (the "Act"), 18 U.S.C. § 3582(c)(1)(A). (ECF No. 640.) The United States of America (the "Government") did not oppose. The Court has carefully considered Walker's motion and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court grants Walker's Motion.

**I.   BACKGROUND**

From April to August of 2019, Walker was involved in trafficking crack and powder cocaine throughout Monmouth County, New Jersey. (Presentence Report ["PSR"] ¶¶ 2, 3, ECF No. 561.) In August 2019, Walker was arrested for her involvement in the scheme. (*Id.* ¶ 118.) Ultimately, Walker was charged with one count of conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base, and one count of conspiracy to distribute and

possess with intent to distribute 500 grams or more of cocaine, both in violation of 28 U.S.C. § 846. (Second Superseding Indictment 2-3, ECF No. 449.)

On June 14, 2022, Walker pled guilty to both counts in the Second Superseding Information. (PSR ¶ 53; Plea Agreement 1, ECF No. 501; *see also* Walker Superseding Information, ECF No. 497.) The plea agreement was made contingent upon the dismissal of charges against Walker in the Second Superseding Indictment and a promise not to further charge Walker for her involvement in the trafficking scheme. (Plea Agreement 1.) Walker was sentenced to 27 months of imprisonment, followed by three years of supervision. (J. 3-4, ECF No. 571.) In June 2023, Walker surrendered to the Federal Prison Camp ("FPC") in Alderson, West Virginia, and began her sentence. (Def.'s Moving Br. 2, ECF No. 640.) To date, Walker has served about 9 months of her 27-month sentence. Due to "earned time credits" under the First Step Act, Walker's projected release date is August 3, 2024. (*Id.*) Walker anticipates that "she will only be required to serve 13 months" due to her participation in positive programming. (*Id.* at 3.)

Based on the above, Walker filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), which the Government did not oppose. (*Id.* at 1.) Walker requests a sentence reduction so that she may "resume the custody and care of her minor children . . . and help care for her mother." (*Id.*) Walker asserts that there are two extraordinary and compelling reasons that would justify the reduction: (1) Walker must care for her three minor children—including her 12-year-old son with diabetes and epilepsy—all of whom are currently under the care and sole custody of Walker's 20-year old daughter "who cannot adequately protect her siblings' health and safety"; and (2) Walker must care for her 66-year-old mother, who has been hospitalized for more

than 30 days and depends upon medical equipment, as her mother's power-of-attorney [1]. (*Id.* at 1, 3-4; Walker Declaration ¶ 2, ECF No. 640-1; PSR ¶ 182.) Additionally, Walker states that she is no longer a danger to the community and that a reduction would be "consistent with any applicable policy statement." (Def.'s Moving Br. 1.)

On February 6, 2024, a Probation Officer conducted a home inspection at Walker's proposed residence, located in Asbury Park, New Jersey. (Probation Mem.) The one-bedroom, one-bathroom apartment is reported to normally be inhabited by Walker's mother, who is currently hospitalized. (*Id.*) The Probation Officer reported that the apartment was "somewhat unkept" but that Walker's daughter was "in the process of cleaning the apartment and moving several bins of clothing out." (*Id.*) The Probation Office indicated that it does not take a position with regard to the merits of Walker's motion, but noted that it finds "the release plan submitted by [Walker] to be suitable for supervision purposes." (*Id.*)

Several declarations were submitted in support of Walker's motion, including: (1) Walker's own declaration (ECF No. 640-1); (2) the declaration of Jennifer Salus, a social worker employed by Monmouth County who works as a Transitional Housing Liaison for families experiencing homelessness (ECF No. 640-1); (3) the declaration of Stacey DePoe, a program director at Catholic Charities Diocese of Trenton (ECF No. 640-1); (4) the declaration of Gregory Thomas, Walker's father (ECF No. 640-1); (5) the declaration of Yanet Estrella, investigator at the Office of the Federal Public Defender for the District of New Jersey (ECF No. 640-1); (6) the declaration of Alison Brill, Assistant Federal Public Defender and counsel for Walker (ECF No.

---

[1] Walker cites that her mother uses a ventilator, a tracheal tube, and a percutaneous endoscopic gastrostomy ("PEG") tube to help her breathe and eat. (*Id.*) She hopes that her mother will soon be "discharged from the hospital for necessary intensive rehabilitation." (*Id.*)

640-1); and (7) the declaration of Ashton Riegler, case manager at Catholic Charities Diocese of Trenton, and case manager for Walker's 20-year-old daughter (ECF No. 640-2).

On February 8, 2024, additional correspondence was filed by Ms. Brill, indicating that Walker's children "have now been terminated from Monmouth County Emergency Assistance and will have to move out of . . . their temporary housing program" into a motel for no more than 30 days beginning on February 9, 2024. (ECF No. 641.) The correspondence indicates that the "family was in violation of . . . program policies and [Walker's daughter] was also in violation" of an unspecified "county services plan." (*Id.*)

## II.     LEGAL STANDARD

A district court generally has limited authority to modify a federally imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). The Act, however, permits district courts to grant compassionate release where "extraordinary and compelling reasons" support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A)  the court, upon motion of the Director of the [Bureau of Prisons ("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c). As such, under the Act, a district court may grant a compassionate release motion "if the court finds that the sentence reduction is (1) warranted by extraordinary and

4

compelling reasons; (2) consistent with applicable policy statements issued by the Sentencing Commission; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a) . . . ." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the Commission's policy statement" for defendant-filed compassionate release motions. *Id.* at 259.

**III.     DISCUSSION**

The Government has not opposed Walker's motion, and thus the Court turns directly to the merits of Walker's motion and addresses, first, whether she has exhausted appropriate administrative remedies, second, whether she has demonstrated extraordinary and compelling reasons for release that are consistent with any applicable policy statements and, *third*, whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

**A.     Exhaustion of Administrative Remedies**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), more than thirty days have elapsed from the receipt of the BOP's request from Walker. (Def.'s Moving Br. 1.) The Court, accordingly, finds that the exhaustion requirement is met. *See Clancy*, No. 17-31, 2021 WL 1826906, at *2 (finding that defendant satisfied the exhaustion requirement because more than thirty days elapsed since defendant's request to the BOP for compassionate release). The Court proceeds with the remaining analysis.

**B.     Extraordinary and Compelling Reasons**

The Court must determine whether Walker's circumstances rise to an "extraordinary and compelling" level so that release may be warranted. 18 U.S.C. § 3582(c). The Sentencing Commission adopted a policy statement regarding the reduction in a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), effective November 1, 2023. *See* U.S.S.G. § 1B1.13 (the "Policy

Statement"). In relevant part, the Policy Statement provides that extraordinary and compelling reasons may exist to warrant a sentence reduction based on a defendant's family circumstances:

> (3) Family Circumstances of the Defendant.—
>
> (A) The death or incapacitation of the caregiver of the defendant's minor child . . .
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3). For guidance on what constitutes "incapacitation," courts have looked to the BOP guidelines for handling inmate compassionate release requests based on the incapacitation of a spouse. *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citation omitted). The BOP guidelines have defined incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." *Id.* at *3 (quoting *United States v. Collins*, Nos. 15-10188, 17-10061, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (citing BOP Program Statement § 5050.50[2])).

The Court finds that Walker has established that her family circumstances constitute extraordinary and compelling circumstances that could warrant her release. Walker asserts that her

---

[2] Courts have also relied upon the BOP Program Statement regarding the "kind of evidence a defendant could use to show his or her family circumstances constituted extraordinary and compelling reasons for his or her compassionate release." *United States v. Jones*, No. 13-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (citing *Collins*, 2020 WL 136859, at *4.) Accordingly, when evaluating the incapacitation of an individual,

> adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding the [individual's] incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the [individual], and a statement and documentation regarding the inmate's release plan.

*Id.*

mother has been hospitalized in an intensive care unit ("ICU") since December 2023. (Def.'s Moving Br. 5.) On January 15, 2024, Walker's mother was on a ventilator, a tracheal tube, and a PEG tube to help breathe and eat. (*Id.* at 5-6.) That same day, Walker's mother was moved out of the ICU and on January 24, 2024, Walker's mother was in the process of potentially being discharged to another facility. (*Id.* at 6.) Although Walker's mother's condition has improved since her initial hospitalization, Walker reports that she remains in critical condition and in need of intensive care, such that she "likely will never be able to provide any further support to her grandchildren." (*Id.*) Although it remains unclear whether Walker is the "*only* available caregiver for [her mother]" under U.S.S.G. § 1B1.13(b)(3) (emphasis added), the Court recognizes that Walker retains power-of-attorney over her mother (Walker Declaration ¶ 3) and has critical responsibilities regarding the care of her parent. (*Id.*)

With this background in mind, the Court finds that the incapacitation of Walker's mother—who is the present primary caregiver of Walker's minor children—is an extraordinary and compelling circumstance that may warrant a sentence reduction. Walker states that her children were supposed to live with her mother in her mother's apartment and that her mother was supposed to help provide transportation to the children's medical and school appointments. (Walker Declaration ¶ 6; Def.'s Moving Br. 4-5.) Prior to Walker's mother's hospitalization, for example, Walker's mother assisted with school drop off and pick up, managing medication for Walker's diabetic son, and "providing general adult guidance." (Walker Declaration ¶ 6; Def.'s Moving Br. 5.) Since December 2023, however, Walker's mother has no longer been able to care for them because of her serious medical issues. (Walker Declaration ¶ 6; Def.'s Moving Br. 4.)

7

The Court also notes that, due to her mother's health problems, Walker had to give her 20-year-old daughter legal custody of her two minor siblings, who are 12 and 14 years old.[3] (Walker Declaration ¶¶ 2, 6, 7; Def.'s Moving Br. 4.) Walker's children had to move out of their grandmother's apartment and live in transitional housing for homeless families after obtaining funding under Temporary Assistance for Needy Families ("TANF"). (Def.'s Moving Br. at 4-5.) As a consequence, Walker's children had to "stay[] in a hotel for several weeks until they were evaluated and then approved to join" a Catholic Charities program to assist them with getting out of homelessness. (*Id.* at 5.)

Based on recent correspondence, as of February 9, 2024, Walker's children will no longer be housed through a temporary housing program and will again be required to reside in a motel. (ECF No. 641.) Moreover, the Court recognizes that Walker's 12-year-old son is diagnosed with diabetes and epilepsy, which requires medication and two different insulin shots daily. (Def.'s Moving Br. 5.) The diagnosis requires a strict diet and reportedly has "created some behavioral problems" for Walker's son. (*Id.*) Walker notes that her 20-year-old daughter also requires her own support, which impacts her daughter's ability to care for the minor children. (*Id.* at 6-7.) Walker reports, for example, that her daughter lost important medication on three occasions and that her son required medical attention, in which doctors communicated that Walker's daughter "was neglecting [the son] by not giving him his insulin." (*Id.* at 6.)

Based on the above, the Court finds that Walker has demonstrated that extraordinary and compelling reasons exist due to the incapacitation of her mother, the caregiver of Walker's minor children.

---

[3] Walker states that her 18-year-old son has enrolled in the army. (Def.'s Moving Br. 4.)

8

C.  **18 U.S.C. § 3553(a) Factors**

Finally, the Court must determine whether the 18 U.S.C. § 3553(a) sentencing factors[4] support Walker's sentence reduction. In particular, the Supreme Court has found that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." *Pepper v. United States*, 562 U.S. 476, 491 (2011). Specifically,

> [postsentencing rehabilitation] may . . . be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see *United States v. McMannus*, 496 F.3d 846, 853 (C.A.8 2007)) (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary," to comply with the sentencing purposes set forth in § 3553(a)(2).

*Id.*

In the instant offense, Walker was a "principal member of the drug-trafficking conspiracy who obtained significant quantities of cocaine and crack cocaine from [a co-conspirator] and re-distributed that cocaine and crack cocaine, for profit, to other members of the conspiracy and various dealers, sub-dealers, and end users." (PSR ¶ 77.) *See United States v. Paulino-Escalera*, No. 20-63, 2022 WL 13837812, at *5 (D.N.J. Oct. 21, 2022) (denying defendant's motion for sentence reduction because the defendant "distributed massive quantities of heroin in New Jersey

---

[4] The factors include the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the guidelines and guideline range, the guideline policy statements, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553.

over the course of several months, a serious offense considering the ongoing drug epidemic in this state."). Moreover, Walker had a criminal history score of four at the time of her sentencing and thus has a criminal history category of III. (PSR ¶ 175.)

On balance, however, the Court finds that the relevant considerations weigh in favor of reducing Walker's sentence. In particular, the Court finds that the potential for recidivism is low. Walker is currently 47 years old and is the mother of minor children who require her immediate attention and care. (*See generally* PSR; Walker Declaration; Def.'s Moving Br.) Walker is also the caretaker of her mother. (Walker Declaration ¶ 3.) Walker reports that she plans to immediately seek employment so that she can rent an apartment and regain custody of her minor children. (Def.'s Moving Br. 10.) In regards to Walker's postsentencing rehabilitation, Walker has continued to work at FPC the in laundry department, and has further completed ten Evidence-Based-Recidivism-Reduction programs since June 2023. (*Id.*; Walker Declaration ¶ 9.)

The Court also notes that Walker self-surrendered and pled guilty to two counts of the Superseding Indictment.[5] (PSR ¶ 53; Walker Declaration ¶ 8.) When released on bond and at the time of sentencing, Walker worked full-time in a salaried position at Nationwide Financial and ran her own catering business. (PSR ¶¶ 198-99.) Further, Walker's expected release date is only six months away in August 2024. (Def.'s Moving Br. 2); *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (holding that courts can take into account the time remaining to be served when considering compassionate release). Finally, the Court considers that Walker has a three-year term of supervised release. (ECF No. 571.) Any violations of the supervised release could result in additional imprisonment, which serves as an effective deterrent to prevent Walker from

---

[5] Walker notes that her self-surrender was delayed because of her own medical needs (PSR ¶ 53; Walker Declaration ¶ 8.)

10

revisiting the judicial system. And importantly, the Government and Probation do not oppose Walker's motion.

In sum, this Court also finds that releasing Walker would be consistent with the sentencing factors under 18 U.S.C. § 3553(a).

### IV.   CONCLUSION

For the above reasons, Walker's Emergency Motion for Compassionate Release is granted. Walker's sentence is herby reduced to time served with a three-year term of supervised release to follow. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE